IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ALMONDNET, INC, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| vs. | ) CASE NO. 10-CV-298-BBC <br> ) |
| MICROSOFT CORPORATION, | ) JURY TRIAL DEMANDED <br> ) |
| Defendant. | ) <br> ) |

**MICROSOFT'S ANSWER AND COUNTERCLAIMS
TO ALMONDNET'S FIRST AMENDED COMPLAINT**

Microsoft Corporation ("Microsoft") answers AlmondNet, Inc.'s ("AlmondNet") Complaint, filed on June 3, 2010, as follows (the numbered paragraphs below correspond to the like numbed paragraphs in the Complaint and any allegation of the Complaint not expressly admitted below is denied):

**NATURE OF THE ACTION**

1.     Microsoft admits that AlmondNet has brought this civil action alleging infringement by Microsoft of United States Patent Nos. 6,973,436 ("the '436 patent"), 7,072,853 ("the '853 patent"), 7,454,364 ("the '364 patent"), 7,822,637 (collectively, "the AlmondNet patents-in-suit"), and that such actions arise under the patent laws of the United States, Title 35, United States Code.  However, Microsoft denies committing any patent infringement or other tortious or unlawful act.

**PARTIES**

2.     Microsoft lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint.

3. Microsoft admits that it is a Washington corporation with its principal place of business at One Microsoft Way, Redmond, Washington 98052-6399.

## JURISDICTION AND VENUE

4. Microsoft admits that this Court has subject matter jurisdiction over claims arising under the patent laws of the United States, pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. Microsoft admits that it does business in and has and seeks customers in Wisconsin and is subject to personal jurisdiction in this forum, but denies that it has committed any acts of patent infringement in this district or elsewhere. Further, Microsoft denies committing any tortious or unlawful act in this district or elsewhere.

6. Microsoft admits that it does business in this district and that venue in this district, among others, is proper, but denies that it has committed any acts of patent infringement in this district or elsewhere. Further, Microsoft denies committing any tortious or unlawful act in this district or elsewhere.

## FACTUAL BACKGROUND

7. Microsoft lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint.

8. Microsoft lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint.

9. Microsoft lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint.

10. Microsoft lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint.

11. Microsoft lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint.

12. Microsoft admits that it provides various software and Internet-based products and services worldwide, including online advertising services. Microsoft admits that it offers advertising services in connection with its Bing search engine and otherwise.

13. Microsoft admits that http://adcenter.microsoft.com provides access to its adCenter services for advertisers. Microsoft admits that adCenter allows advertisers to submit bids in conjunction with advertisements that may be displayed to users of its Bing Search Engine and/or otherwise. Microsoft admits that advertisers can submit bids through adCenter and that bids for keywords and/or other advertising opportunities may sometimes depend upon visitors' search activity, demographic information, and/or online behavior.

14. Microsoft admits that various representatives of AlmondNet communicated via email, in person, or otherwise with various Microsoft employees in 2005 and 2006, but otherwise denies AlmondNet's characterization of any such contacts and further lacks knowledge sufficient to form a belief at this time as to AlmondNet's intent relating to any such contacts.

15. Microsoft admits that various representatives of AlmondNet communicated via email, in person, or otherwise with various Microsoft employees in 2005 and 2006, but otherwise denies AlmondNet's characterization of any such contacts and further lacks knowledge sufficient to form a belief at this time as to AlmondNet's intent relating to any such contacts.

16. Microsoft admits that various representatives of AlmondNet communicated via email, in person, or otherwise with various Microsoft employees in 2005 and 2006, but otherwise denies AlmondNet's characterization of any such contacts and further lacks knowledge sufficient to form a belief at this time as to AlmondNet's intent relating to any such contacts.

17. Microsoft admits that various representatives of AlmondNet communicated via email, in person, or otherwise with various Microsoft employees in 2005 and 2006, but otherwise denies AlmondNet's characterization of any such contacts and further lacks knowledge sufficient to form a belief at this time as to AlmondNet's intent relating to any such contacts.

18. Microsoft admits that various representatives of AlmondNet communicated via email, in person, or otherwise with various Microsoft employees in 2005 and 2006, but otherwise

denies AlmondNet's characterization of any such contacts and further lacks knowledge sufficient to form a belief at this time as to AlmondNet's intent relating to any such contacts.

19.     Microsoft admits that AlmondNet and Microsoft have not entered into any written patent license.

20.     Microsoft denies the allegations in paragraph 19 of the Amended Complaint.

## COUNT I
### (Microsoft's [alleged] Infringement of U.S. Patent No. 6,973,436)

21.     Microsoft incorporates by reference paragraphs 1-20 above.

22.     Microsoft denies the allegations in paragraph 22 of the Amended Complaint.

23.     Microsoft denies that it that it has ever infringed or is currently infringing the '436 patent willfully or in any other way.

24.     Microsoft denies that it has committed any acts of infringement. Microsoft further denies that AlmondNet has been damaged by Microsoft's alleged acts or that AlmondNet is entitled to any form of injunctive relief on account of said alleged acts.

## COUNT II
### (Microsoft's [alleged] Infringement of U.S. Patent No. 7,072,853)

25.     Microsoft incorporates by reference paragraphs 1-20 above.

26.     Microsoft denies the allegations in paragraph 26 of the Complaint.

27.     Microsoft denies that it that it has ever infringed or is currently infringing the '853 patent willfully or in any other way.

28.     Microsoft denies that it has committed any acts of infringement. Microsoft further denies that AlmondNet has been damaged by Microsoft's alleged acts or that AlmondNet is entitled to any form of injunctive relief on account of said alleged acts.

## COUNT III

### (Microsoft's [alleged] Infringement of U.S. Patent No. 7,454,364)

29. Microsoft incorporates by reference paragraphs 1-20 above.

30. Microsoft denies the allegations in paragraph 30 of the Amended Complaint.

31. Microsoft denies that it that it has ever infringed or is currently infringing the '364 patent willfully or in any other way.

32. Microsoft denies that it has committed any acts of infringement. Microsoft further denies that AlmondNet has been damaged by Microsoft's alleged acts or that AlmondNet is entitled to any form of injunctive relief on account of said alleged acts.

## COUNT IV

### (Microsoft's [alleged] Infringement of U.S. Patent No. 7,822,637)

33. Microsoft incorporates by reference paragraphs 1-20 above.

34. Microsoft denies the allegations in paragraph 34 of the Amended Complaint.

35. Microsoft denies that it that it has ever infringed or is currently infringing the '637 patent willfully or in any other way.

36. Microsoft denies that it has committed any acts of infringement. Microsoft further denies that AlmondNet has been damaged by Microsoft's alleged acts or that AlmondNet is entitled to any form of injunctive relief on account of said alleged acts.

## JURY DEMAND

37. Microsoft acknowledges AlmondNet's request for a trial by jury on all issues so triable in this action.

## PRAYER FOR RELIEF

Microsoft denies that AlmondNet is entitled to any of the relief requested in its prayer for relief or any relief whatsoever.

Microsoft denies all allegations of the Complaint not specifically admitted above.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

38. On information and belief, Microsoft has not and does not (a) literally infringe, (b) infringe under the doctrine of equivalents, (c) contributorily infringe, or (d) induce infringement of any valid claim of the '436, '853, '364 or '637 patents either literally or under the doctrine of equivalents.

### Second Affirmative Defense

39. On information and belief, each and every asserted claim of the '436, '853, '364 and '637 patents is invalid for failure to comply with the conditions of patentability, including but not limited to 35 U.S.C. §§ 101, 102, 103, 111, 112, 113, and 133.

### Third Affirmative Defense

40. On information and belief, AlmondNet has inexcusably delayed filing this suit for an unreasonable period of time to the material prejudice of Microsoft and are now barred from recovery of pre-suit damages because of laches.

### Fourth Affirmative Defense

41. On information and belief, the claims of the '436, '853, '364 and '637 patents are barred by prosecution laches, license, estoppel and/or waiver.

**Fifth Affirmative Defense**

42. Plaintiff's demand to enjoin Microsoft is barred, as the Plaintiff has suffered neither harm nor irreparable harm from Microsoft's actions.

**Sixth Affirmative Defense**

43. Plaintiff's claims for relief are barred in whole or in part under 35 U.S.C. § 287.

**Seventh Affirmative Defense**

44. Plaintiff's allegations of infringement of the '436, '853, '364 and '637 patents are barred because the '436, '853, '364 and '637 patents are unenforceable pursuant to 37 C.F.R. § 1.56 and the doctrine of inequitable conduct, individually and collectively, at least under the doctrine of infectious unenforceability based on the knowing and calculated failure to disclose material information and publications during one or more of the applications leading to said patents concerning the state of the relevant prior art that alone would have been material to a reasonable examiner determining patentability while also making one or more representations concerning the alleged inventive contribution of proposed claims in the applications for said patents that were contrary to the record established by the withheld information.

45. The '436, '853, '364 and '637 patents are unenforceable at least because named inventor Roy Shkedi and/or his patent agents failed to comply with his duty of candor and good faith, including his duty of disclosure.

46. As the named inventor on the '436, '853, '364 and '637 patents, Mr. Shkedi and his patent agents had a duty to disclose information material to patentability to the Patent Office. Upon information and belief, he and/or his patent agents failed to disclose to the Patent Office certain prior art publications in his possession and certain prior art systems that he investigated in the course of creating his business and technology model for AlmondNet.

47. Upon information and belief, Mr. Shkedi conducted an investigation into the state of internet advertising in and around 1997 in developing a business plan for AlmondNet through which he planned to market an embodiment of the invention(s) claimed in the '436, '853, '364 and '637 patents. Upon information and belief, Mr. Shkedi and/or his patent agents did not

7

disclose to the Patent Office any of the prior art publications he gathered in the course of his investigation or any of the pertinent information he uncovered about the existing products and services provided by companies he expected AlmondNet to compete with.

48.     For instance, Mr. Shkedi had in his possession and used in developing his business plans for AlmondNet numerous publications containing material information regarding online advertising. Upon information and belief, these publications include "Web Ads Start to Click" by Linda Himelstein, Ellen Neuborne, and Paul Eng and published in *Business Week*, October 6, 1997 ("Himelstein"); a whitepaper published by ClickOver, Inc. on or before June 14, 1997 titled "Electronic Advertising Market Overview" ("ClickOver"); and a September 1996 research report from Forrester Research titled "Internet Advertising" ("Forrester").

49.     Upon information and belief, each of these publications was in Mr. Shkedi's possession prior to the December 28, 1999 filing of the oldest U.S. patent application to which the '436, '853, '364 and '637 patents claim priority, and Mr. Shkedi and/or his patent agents disclosed none of the publications to the Patent Office during the prosecution of any of the four patents. Each of these references was published more than a year prior to the earliest U.S. filing and is prior art under at least 35 U.S.C. §§ 102(b) and/or 103.

50.     Upon information and belief, the Himelstein reference is material to patentability because a reasonable examiner would have found it important to assessing patentability to know about the various types of existing and proposed internet advertising, including the targeting options, that are described in the reference and upon which the applicant sought to improve. For example, the reference describes how "a cyber-promo can zero in on Netizens who live in a specific part of town, are female, and who have shown an interest in certain topics or products." In addition, the reference further identifies targeting ads as a desired option for improving performance and revenue for the advertising provider. Upon information and belief, the reference is not cumulative of those considered by the examiner.

51.     Upon information and belief, Mr. Shkedi and/or his patent agents withheld the Himelstein reference with intent to deceive the Patent Office. Upon information and belief, the reference was attached to a business plan authored by Mr. Shkedi describing AlmondNet's plans to commercialize a product that AlmondNet has alleged to embody the claimed invention(s) of

the '436, '853 and '364 patents.  The failure to disclose a reference used in the development of a commercial version of the claimed invention(s) is evidence of specific intent to deceive the Patent Office or a knowing disregard for providing the Patent Office with information that would have been material to determining the patentability of claims at issue in the original and subsequent applications for the patents now in suit.

52.     Upon information and belief, the ClickOver reference is material to patentability because a reasonable examiner would have found it important to assessing patentability to know about the various prior art internet advertising services, including user profiling and ad management services, disclosed in the reference and upon which the applicant sought to improve.  Upon information and belief, the reference is not cumulative of those considered by the examiner.

53.     Upon information and belief, Mr. Shkedi and/or his patent agents withheld the ClickOver reference with intent to deceive the Patent Office.  Upon information and belief, the reference was attached to a business plan authored by Mr. Shkedi describing AlmondNet's plans to commercialize a product that AlmondNet has alleged embodies the claimed invention(s) of the '436, '853 and '364 patents.  The failure to disclose a reference used in the development of a commercial version of the claimed invention(s) is evidence of intent to deceive the Patent Office or a knowing disregard for providing the Patent Office with information that would have been material to determining the patentability of claims at issue in the original and subsequent applications for the patents now in suit.

54.     Upon information and belief, the Forrester reference is material to patentability because a reasonable examiner would have found it important to assessing patentability to know about the extensive amounts of information it discloses on the state of internet advertising including information on pricing and targeting of ads and upon which the applicant sought to improve.  Upon information and belief, the reference is not cumulative of those considered by the examiner.

55.     Upon information and belief, Mr. Shkedi and/or his patent agents withheld the Forrester reference with intent to deceive the Patent Office.  Upon information and belief, the reference was quoted extensively in a business plan authored by Mr. Shkedi describing

9

AlmondNet's plans to commercialize a product that AlmondNet has alleged to embody the claimed invention(s) of the '436, '853 and '364 patents. This identification and discussion in such a business plan manifests an appreciation of the relevance of the withheld references and specific pertinence to the purported invention. The failure to disclose a reference used in the development of a commercial version of the claimed invention(s) is evidence of intent to deceive the Patent Office or a knowing disregard for providing the Patent Office with information that would have been material to determining the patentability of claims at issue in the original and subsequent applications for the patents now in suit.

56. In addition, upon information and belief, Mr. Shkedi was aware of some of the advertisement selection and pricing mechanisms used by competitors and potential competitors of AlmondNet based on his investigations of the market landscape as he created the business plans for the AlmondNet product that he has alleged embodies the claimed invention(s) of the '436, '853 and '364 patents. Upon information and belief, Mr. Shkedi considered at least DoubleClick, ClickOver, and NetGravity to be competitors and/or potential competitors of AlmondNet, and he investigated the publically available information about these companies products and services. These companies' products and services were used and sold at least a year before December 28, 1999 filing of the earliest U.S. application to which the '436, '853, '364 and '637 patents claim priority and are consequently prior art under at least 35 U.S.C. §§ 102(b) and/or 103.

57. Upon information and belief, as of late 1997, DoubleClick offered internet advertising priced such that the advertiser would pay an additional amount for one targeting criteria and a greater additional amount for two targeting criteria. Upon information and belief, these targeting criteria included geographic location, domain name, SIC code, browser type, operating system, and service provider. All of these criteria are listed in dependent claims of the '436 and '853 patents. Upon information and belief, this information is material to patentability because a reasonable examiner would have found it important to assessing patentability to know about this pricing structure. This structure is particularly pertinent to the "first price offer" and "supplemental price offer" limitations of the '364 and '637 patent claims, which the applicant alleged were not found in the prior art considered by the examiner. Upon information and belief, this information is not cumulative of what was before the examiner.

58. Upon information and belief, Mr. Shkedi was aware of this information about DoubleClick's pricing, and he and/or his patent agents withheld it with intent to deceive the Patent Office. Upon information and belief, Mr. Shkedi investigated the information available on DoubleClick's website about DoubleClick's internet advertisement services in or around 1997, including the pricing and targeting options provided by DoubleClick. On information and belief, Mr. Shkedi understood the materiality of DoubleClick's prior art pricing and targeting options but did not disclose this information to the patent office because he understood that it would have at least made obvious the "first price offer" and "supplement price offer" limitations of the '364 and '637 patent claims, limitations that he and/or his patent agents asserted were missing from the references considered by the examiner. This failure to disclose information material to the claim limitations allegedly not found in the prior art before the examiner is evidence of intent to the deceive the Patent Office or a knowing disregard for providing the Patent Office with information that would have been material to determining the patentability of claims at issue in the original and subsequent applications for the patents now in suit.

59. Upon information and belief, as of late 1997, ClickOver offered the internet advertising software ClickWise, which would, upon each request for an ad, determine the highest scoring or best ad to return. Upon information and belief, ClickOver's ClickWise software supported ad targeting that included weighted targeting, exclusions, and exclusives. Upon information and belief, ClickWise's targeting options included hour of day, domain name, operating system, and browser types, all of which are listed in dependent claims of the '436 and '853 patents. Upon information and belief, this information is material to patentability because a reasonable examiner would have found it important to assessing patentability to know about an ad selection mechanism that included weighted targeting. This mechanism is particularly pertinent in light of the applicant's repeated assertions that the prior art before the examiner did not include advertisers assigning values to visitor attributes which would then be used in the selection of which ad to return. Upon information and belief, this information is not cumulative of what was before the examiner.

60. Upon information and belief, Mr. Shkedi was aware of this information about ClickOver's targeting and selection mechanism, and he and/or his patent agents withheld it with intent to deceive the Patent Office. Upon information and belief, Mr. Shkedi investigated the

11

information available on ClickOver's website and other publically available information pertaining to ClickOver's internet advertisement services in or around 1997, including the targeting and selection mechanism provided by ClickOver's ClickWise software. On information and belief, Mr. Shkedi understood the materiality of ClickOver's prior art targeting and selection mechanism but did not disclose this information to the patent office because he understood that the examiner may have found the claims obvious in light of this information. This failure to disclose information material to what Mr. Shkedi alleged was not found in the prior art before the examiner is evidence of intent to the deceive the Patent Office or a knowing disregard for providing the Patent Office with information that would have been material to determining the patentability of claims at issue in the original and subsequent applications for the patents now in suit.

61.     Upon information and belief, as of late 1997, NetGravity offered internet advertising server software AdServer 3.0, which allowed users to assigned their own values to targeting information. Upon information and belief, this information is material to patentability because a reasonable examiner would have found it important to assessing patentability to know about software that allowed users to assign values to targeting information. This capability is particularly pertinent in light of the applicant's repeated assertions that the prior art before the examiner did not include advertisers assigning values to visitor attributes. Upon information and belief, this information is not cumulative of what was before the examiner.

62.     Upon information and belief, Mr. Shkedi was aware of NetGravity's AdServer 3.0's capabilities, and he and/or his patent agents withheld it with intent to deceive the Patent Office. Upon information and belief, Mr. Shkedi investigated the information available on NetGravity's website about its AdServer 3.0 software in or around 1997, including its ability to accept values for targeting criteria set by users. On information and belief, Mr. Shkedi understood that the examiner may have found the claims obvious in light of this information. This failure to disclose information material to what Mr. Shkedi alleged was not found in the prior art before the examiner is evidence of intent to the deceive the Patent Office or a knowing disregard for providing the Patent Office with information that would have been material to determining the patentability of claims at issue in the original and subsequent applications for the patents now in suit.

63.     The foregoing paragraphs describe information and publications as to which Mr. Shkedi and his patent agent(s) were aware of prior to and throughout the prosecution of the patents now in suit.  In multiple business plans, Mr. Shkedi identified this information and publications as pertinent to the background, development, and potential commercial viability of systems intended to be developed by AlmondNet and covered by the patents.  In those business plans, Mr. Shkedi further acknowledged and emphasized the importance of perfecting patent protection for the envisioned AlmondNet system.  And, in the original patent application submitted in the United States Patent Office, and in each subsequent related application, Mr. Shkedi characterized portions of this information and related publications in a misleading manner, which was never corrected.  Mr. Shkedi's conduct in selectively referencing this information and publications, as well as in never actually providing the full information or relevant publications, manifests an intent to deceive the Patent Office as a whole and the responsible examiners in particular, or at least a knowing disregard for the truth,  as to the proper state of the prior art and the relative contribution, if any, of the purported inventions in the claims of the asserted patents.

64.     Microsoft reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

## COUNTERCLAIMS

For its counterclaims against AlmondNet, Microsoft states the following:

### NATURE OF THIS ACTION

1.     Microsoft brings the compulsory counterclaims under the patent laws of the United States, 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, to obtain a declaratory judgment that each and every claim of U.S. Patent Nos. 6,973,436; 7,072,853; 7,454,364; and 7,822,637 is neither valid nor infringed.  Microsoft further brings  the permissive counterclaim under the laws of the United States, 35 U.S.C. § 1 et seq., to obtain judgment that AlmondNet is directly infringing and/or inducing others to infringe and/or contributing to the infringement of by making, using, offering to sell, or selling in the United

States, or importing into the United States, products or processes that practice inventions claimed in U.S. Patent No. 6,632,248 ("the '248 patent").

## PARTIES

2.      Counterclaim-Plaintiff Microsoft is a corporation organized and existing under the laws of the State of Washington, with its principal place of business in Redmond, Washington.

3.      Counterclaim-Defendant AlmondNet claims that it is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business at 134 Spring Street, Suite 302, New York, New York 10012.  On information and belief, AlmondNet provides online advertisement services, at least including its Post-Search advertising service, in the United States involving the placement of advertisements related to an individual's past searches on other websites.

## JURISDICTION AND VENUE

4.      These counterclaims arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. This Court has subject-matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

5.      AlmondNet has consented to personal jurisdiction for this action in this district by filing the original and amended complaints in this action in this Court [Docket Nos. 1 and 29].

6.      To the extent that venue over AlmondNet's claims is found to be proper, venue is proper in this district for this counterclaim pursuant to 28 U.S.C. § 1391(b)–(c).

## FACTUAL BACKGROUND

7.      AlmondNet has alleged that it is the owner of U.S. Patent Nos. 6,973,436, entitled "Method for Transacting an Advertisement Transfer"; 7,072,853, entitled "Method for Transacting an Advertisement Transfer"; 7,454,364, entitled "Method for Transacting an Advertisement Transfer"; and 7,822,637 entitled "Method for Transacting an Advertisement Transfer."  [Docket No. 29].

8.AlmondNet has expressly charged Microsoft with infringement of the '436, '853, '364 and '637 patents by filing a complaint against Microsoft in this Court [Docket No. 29]. Microsoft has denied these allegations. Thus, for at least this reason, there exists an actual controversy between AlmondNet and Microsoft regarding the '436, '853, '364 and '637 patents.

9.Microsoft is the owner of all right, title, and interest in the '248 patent, which AlmondNet is directly infringing and/or inducing others to infringe and/or contributing to the infringement of by making, using, offering to sell, or selling in the United States, or importing into the United States, products or processes at least including its Post-Search advertising service that practice inventions claimed in the '248 patent.

10.As a result of AlmondNet's unlawful infringement of the '248 patent, Microsoft has suffered and will continue to suffer damage. Microsoft is entitled to recover from AlmondNet the damages suffered by Microsoft as a result of AlmondNet's unlawful acts.

11.Upon information and belief, AlmondNet intends to continue its unlawful infringing activity, and Microsoft continues to and will continue to suffer irreparable harm – for which there is no adequate remedy at law – from such unlawful infringing activity unless AlmondNet is enjoined by this Court.

## COUNT I
**(Infringement of the '248 patent)**

12.Microsoft repeats and realleges the allegations of paragraphs 1 through 11 of these Counterclaims in their entirety.

13.Microsoft is the owner of all right, title, and interest in U.S. Patent No. 6,632,248, entitled "Customization of Network Documents by Accessing Customization Information on a Server Computer Using Unique User Identifiers," duly and properly issued by the U.S. Patent and Trademark Office on October 14, 2003. A copy of the '248 patent is attached as Exhibit 1.

14.AlmondNet has been and/or is directly infringing and/or inducing others to infringe and/or contributing to the infringement of the '248 patent by, among other things, making, using, offering to sell or selling in the United States, or importing into the United States, products and/or services, including various products and services at least including its Post-

Search advertising service that are covered by one or more claims of the '248 patent. The manner and nature of AlmondNet's infringing activities, as currently understood, and the '248 patent claims infringed thereby, as can be currently identified, are set forth in the attached Exhibit 2, Microsoft's Disclosure of Asserted Claims and Preliminary Infringement Contentions, dated September 24, 2010, which is incorporated herein.

15.     AlmondNet has been aware of the '248 patent and its infringing conduct since at least as early as September 17, 2010, and has since continued unabated its infringing activities and promotion of the use of its accused services by its customers in the alleged infringing manner, despite receiving additional specificity and explanation of the nature and manner of its infringement through receipt of Exhibit 2 on September 24, 2010.

## COUNT II
**(Declaratory Judgment of Non-Infringement of the '436, '853, '364 and '637 patents)**

16.     Microsoft repeats and realleges the allegations of paragraphs 1 through 15 of these Counterclaims in their entirety.

17.     Microsoft has not been and is not now infringing any claim of the '436, '853, '364 and '637 patents, either directly or indirectly.

## COUNT III
**(Declaratory Judgment of Invalidity of the '436, '853 and '364 patents)**

18.     Microsoft repeats and realleges the allegations of paragraphs 1 through 17 of these Counterclaims in their entirety.

19.     Microsoft contends that the claims of the '436, '853, '364 and '637 patents are invalid for failure to comply with the conditions of patentability, including but not limited to 35 U.S.C. §§ 101, 102, 103, 111, 112, 113, and 133.

## COUNT IV
**(Declaratory Judgment of Unenforceability of the '436, '853 and '364 patents)**

20.     Microsoft repeats and realleges the allegations of paragraphs 1 through 19 of these Counterclaims in their entirety.

21. Microsoft contends that the claims of the '436, '853, '364 and '637 patents are unenforceable for the reasons given in its Seventh Affirmative Defense in paragraphs 44-63 of its Answer to AlmondNet's Amended Complaint.

## JURY DEMAND

22. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Microsoft respectfully requests a jury trial on its claim of infringement of the '248 patent.

## PRAYER FOR RELIEF

WHEREFORE, Microsoft prays for a judgment in its favor and against AlmondNet:

1. That AlmondNet takes nothing by way of its complaint;

2. That the Court issue a judgment declaring Microsoft has not been and is not now infringing, contributorily infringing, or inducing infringement of any of the claims of the '436, '853, '364 and '637 patents;

3. That the Court issue a judgment declaring the '436, '853, '364 and '637 patents invalid;

4. That the Court issue a judgment declaring the '436, '853, '364 and '637 patents unenforceable;

5. That the Court issue a judgment declaring that AlmondNet has infringed the '248 patent;

6. That the Court issue a judgment awarding Microsoft compensatory damages as a result of AlmondNet's infringement of the '248 patent, together with interest and costs, and in no event less than a reasonable royalty;

7. That the Court grant a permanent injunction pursuant to U.S.C. § 283, enjoining AlmondNet from further acts of infringement; and

8. That Microsoft be awarded its expenses, costs, and attorney's fees under 35 U.S.C. § 285, along with any other and further relief as the Court deems just and proper.

January 18, 2011					Respectfully submitted,

						/s/ Laura L. Kolb

David E. Killough				Christopher G. Hanewicz
davkill@microsoft.com				CHanewicz@perkinscoie.com
MICROSOFT CORPORATION			Perkins Coie
1 Microsoft Way					1 East Main Street, Suite 201
Redmond, Washington 98052			Madison, WI 53703
Telephone: 425-703-8865				Telephone: 608-663-7468
Facsimile: 425-869-1327				Facsimile: 608-663-7499

Bryan K. Anderson				David T. Pritikin
bkanderson@sidley.com				dpritikin@sidley.com
Sidley Austin LLP				Richard A. Cederoth
555 California St. Suite 2000			rcederoth@sidley.com
San Francisco, CA 94104				Laura L. Kolb
Telephone: (415) 772-1200			lkolb@sidley.com
Facsimile: (415) 772-7400			John W. McBride
						jwmcbride@sidley.com
						Herman F. Webley
						hwebley@sidley.com
						SIDLEY AUSTIN LLP
						One South Dearborn
						Chicago, IL 60603
						Telephone: 312-853-7000
						Facsimile: 312-853-7036

						ATTORNEYS FOR DEFENDANT
						MICROSOFT CORPORATION

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on January 18, 2011.

Respectfully submitted,

/s/ Laura L. Kolb