# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| **ALMONDNET, INC.,** | ) |
| | ) |
| **Plaintiff, Counterclaim Defendant** | ) |
| | ) |
| **v.** | )   **Case No. 3:10-CV-298-BBC** |
| | ) |
| **MICROSOFT CORP.,** | ) |
| | ) |
| **Defendant, Counterclaimant.** | ) |
| | ) |

## MICROSOFT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

    A.    The '436 and '853 Patents Expressly Require Combining Bids *Prior* to a Visitor's Visit.........................................................................................................................3

    B.    The '364 and '637 Patents Also Require Combining Bids *Prior* to a Visitor's Visit.........................................................................................................................3

    C.    The Specification and File History Emphasize That Pre-Visit Combination Of Bids Is Essential to the Operation of the Invention. ................................................5

    D.    AdCenter Does Not Combine Advertiser's Bids Prior To The Visitor's Visit........8

        1.    Prior to a Visitor's Visit, adCenter Stores at Most Uncombined Bid Data. 8

        2.    AdCenter Only Processes Bid Data in Response to a Visitor's Visit. .........9

ARGUMENT ..................................................................................................................11

I.    AdCenter Does Not Infringe the Asserted Claims of the '436 and '853 Patents. .............11

    A.    The Asserted Claims of the '436 and '853 Patents Expressly Require Combining an Advertiser's Bids *Prior* to a Visitor's Visit. ....................................................12

    B.    AdCenter Does Not Combine Bids Prior to a Visitor's Visit. ...............................12

II.    AdCenter Does Not Infringe the Asserted Claims of the '364 and '637 Patents. .............13

    A.    The Asserted Claims of the '364 and '637 Patents Also Require Combining an Advertiser's Bids *Prior* to a Visitor's Visit. ........................................................13

        1.    The Invention Described in the Specification Requires Pre-Visit Combining Of Bids. ...................................................................................13

        2.    The File History Clearly And Unequivocally Defines The Invention As Requiring Pre-Visit Combining Of Bids......................................................14

        3.    Limitations in Dependent Claims Do Not Broaden the Scope of AlmondNet's Disclosed Invention............................................................17

        4.    The Doctrine Of Equivalents Cannot Vitiate The Required Pre-Visit Combining Of Bids, And AlmondNet May Not Set Aside Its Disclaimers Of Broader Scope.....................................................................................18

    B.    AdCenter Does Not Combine Bids Prior to a Visitor's Visit. ...............................19

C.      Because adCenter Does Not Directly Infringe, AlmondNet's Indirect
        Infringement Claims Also Fail.............................................................................19

III.    If the Asserted Claims of the '364 and '637 Patents Do Not Require Combining Bids
        Prior to a Visitor's Visit, They Are Invalid Under 35 U.S.C. § 112(1)............................20

        A.      The Purpose Of The Written Description Requirement Is To Ensure That Claims
                Do Not Overreach The Specification...................................................................20

        B.      There Is Nothing In The Specification That Describes A System Or Method That
                Combines Bids At The Time Of The Visitor's Visit. ...........................................21

CONCLUSION.............................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
   2011 U.S. App. LEXIS 13083 (Fed. Cir. June 27, 2011) ........................................................ 17

*Andersen Corp. v. Fiber Composites, LLC*,
   474 F.3d 1361 (Fed. Cir. 2007)..................................................................................... 15, 17

*Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*,
   616 F.3d 1249 (Fed. Cir. 2010)............................................................................................ 11

*Demarini Sports, Inc. v. Worth, Inc.*,
   239 F.3d 1314 (Fed. Cir. 2001)............................................................................................ 18

*Fisher-Price, Inc. v. Safety 1st, Inc.*,
   109 Fed. App'x 387 (Fed. Cir. 2004).................................................................................... 21

*Gentry Gallery, Inc. v. Berkline Corp.*,
   134 F. 3d 1473 (Fed. Cir. 1998) ......................................................................................... 20

*Honeywell Int'l, Inc. v. ITT Indus.*,
   452 F.3d 1312 (Fed. Cir. 2006)............................................................................................ 14

*ICU Med., Inc. v. Alaris Med. Sys.*,
   558 F.3d 1368 (Fed. Cir. 2009).................................................................. 11, 14, 17, 20, 22

*Litton Sys. v. Honeywell, Inc.*,
   140 F.3d 1449 (Fed. Cir. 1998)...................................................................................... 18, 19

*MarcTec, LLC v. Johnson & Johnson & Cordis Corp.*,
   394 Fed. Appx. 685 (Fed. Cir. 2010).................................................................................... 16

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
   474 F.3d 1323 (Fed. Cir. 2007)............................................................................................ 16

*Microsoft Corp. v. Multi-Tech Sys.*,
   357 F.3d 1340 (Fed. Cir. 2004)............................................................................................ 16

*Pass & Seymour, Inc. v. ITC*,
   617 F.3d 1319 (Fed. Cir. 2010)............................................................................................ 11

*PIN/NIP, Inc. v. Platte Chem. Co.*,
   304 F.3d 1235 (Fed. Cir. 2002)...................................................................................... 20, 21

*SciMed Life Sys. v. Advanced Cardiovascular Sys.*,
   242 F.3d 1337 (Fed. Cir. 2001)............................................................................................ 14

*Toshiba Corp. v. Imation Corp.*,
    2010 U.S. Dist. LEXIS 45653 (W.D. Wis. May 10, 2010) ...................................................... 14

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007)............................................................................................ 15

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)............................................................................................................... 18

**Statutes**

35 U.S.C. § 112(1) ........................................................................................................... 1, 20, 23

**Rules**

Fed. R. Civ. P. 26(a)(2)............................................................................................................. 18

## INTRODUCTION

Internet advertising systems provide advertisements to appear on web pages.  Generally, these systems provide ads in response to an ad request from a website's server when a visitor (browsing the web) begins to access a page on that website.  Understanding the concept of a "visitor's visit" to a web page containing ads is critical to understanding the limitations on the scope of AlmondNet's alleged invention.

The concept of a "visitor's visit" can be illustrated with reference to the operation of Microsoft's adCenter.  Suppose a visitor enters a term into Microsoft's Bing search engine and clicks the search button.  Bing makes an ad request to adCenter, which provides ads for display on the Bing search results page that is sent to the visitor's browser.  AlmondNet alleges that the "visitor's visit" begins when the visitor clicks the Bing search button.

The invention described and claimed by AlmondNet's asserted patents has a critical timing requirement keyed to a visitor's visit: the invention requires processing advertising bid data *prior* to a visitor's visit, so that this pre-processed data can be used at the time of a visit to determine which ad to serve.  Indeed, AlmondNet surrendered any possibly broader scope during prosecution of its patents by distinguishing prior art on the grounds that the AlmondNet invention required processing bid data *prior* to a visitor's visit.  The AlmondNet claims necessarily require combining, spreading, or otherwise deriving data from an advertiser's bids on attributes *prior* to a visitor's visit.  Microsoft's adCenter does not infringe the asserted claims of AlmondNet's patents because adCenter does not combine, spread, or otherwise derive data from an advertiser's bids prior to a visitor's visit.  To the extent that any of AlmondNet's asserted claims do not require combining, spreading, or otherwise deriving data from an advertiser's bids prior to a request for an ad, those claims are invalid under 35 U.S.C. § 112(1) for failure to satisfy the written description requirement.

1

## BACKGROUND

As the Court's claim construction order summarizes:

> Plaintiff's patents relate to methods for facilitating internet
> advertisement, connecting advertisers with target groups by
> obtaining information about a website visitor and his or her
> interests and matching that up with the advertisers' bids on what
> they would pay for each particular interest or feature of the visitor.

(Dkt. No. 50, Claim Construction Order 4.)  The present motion focuses on the claim limitations

that concern "the advertisers' bids on what they would pay for each particular interest or feature

of the visitor."  Specifically, each asserted claim of the AlmondNet patents requires that the

"advertisers' bids on what they would pay for each particular interest or feature of the visitor" be

combined prior to a visitor's visit.  While the specific language employed by the claims varies

between the '436 and '853 patents and the '364 and '637 patents, the basic pre-visit combination

of bid data is uniformly present.

AlmondNet has asserted four patents against Microsoft: U.S. Patent Nos. 6,973,436 ("the

'436 patent"); 7,072,853 ("the '853 patent"); 7,454,364 ("the '364 patent"); 7,822,637 ("the '637

patent") (collectively, the "AlmondNet Patents").  Microsoft's Proposed Findings of Fact in

Support of its Motion for Summary Judgment of Non-Infringement and Invalidity ("MFOF")

¶ 4.  All four patents share a common specification.  MFOF ¶ 5.  AlmondNet has asserted claims

1, 3, 6, 8, and 15 of the '436 patent, claims 1, 4, 6, 8, and 15 of the '853 patent; claims 1, 2, 6-11,

14, 15, 17, and 18 of the '364 patent; and claims 1, 2, 5, 9, 12, and 13 of the '637 patent

(collectively, "the AlmondNet asserted claims").  MFOF ¶ 6.[1]

---

[1] It appears from AlmondNet's expert reports that it may no longer assert infringement of claim 8
of the '436 patent or claim 8 of the '853 patent.  *See* MFOF ¶ 6.

### A. The '436 and '853 Patents Expressly Require Combining Bids *Prior* to a Visitor's Visit.

The asserted independent claims of the '436 and '853 patents expressly require that the advertiser's bids on potential visitor attributes be combined, and the price of each combination determined, prior to a visitor's visit to a web site hosting advertising.  MFOF ¶ 7.  Claim 1 of the '436 patent and claim 1 of the '853 patent recite:

> ***prior to the occurrence of a visitor visitation at a communications node*** … (ii) collecting responses from the at least one distributor, wherein a preponderance of the responses have a plurality of attributes and the at least one distributor has assigned to each of at least some of the plurality of attributes an economic value contribution, (iii) ***spreading the attributes*** of a preponderance of the responses ***to form a number of combinations of various attributes***, (iv) ***determining the price of each combination of attributes*** by logically and arithmetically aggregating the economic value contributions ...

(Declaration of Bryan K. Anderson ("Anderson Decl.") Ex. 1, '436 Patent 21:12–30; Anderson Decl. Ex. 2, '853 Patent 21:32–49 (emphasis added).)

### B. The '364 and '637 Patents Also Require Combining Bids *Prior* to a Visitor's Visit.

The asserted independent claims of the '364 and '637 patents do not use the term "prior." Instead, the timing in the invention—in which bid data is processed prior to a visitor's visit—is expressed by, for example, storing bid combinations or data "derived from" the bids ahead of time, in order to access that data at the time of a visitor's visit.  Two independent claims of the '364 patent require "storing . . . data defining at least one combination" of bid data, which is subsequently accessed at the time of a visitor's visit.  MFOF ¶¶ 7–8.  Claim 11 of the '364 patent recites:

> (b) at least one electronic storage in communication with the server ***storing***: (i) first data specifying a plurality of bids for delivery of an associated advertisement to a visitor visiting the communications node, each of which plurality of bids including:

> (A) a first offer price if a visitor to the communications node has a subset of attributes; and (B) at least one supplemental offer price if the visitor has an individual attribute in addition to the subset of attributes; (ii) *second data defining at least one combination of the first offer price and at least one of the supplemental offer prices*; (iii) third data identifying an electronic advertisement associated with each of the bids; and (iv) fourth data logging billing data; (c) *wherein* the server is programmed, *upon receiving a signal denoting a visitor visiting a communications node*… [to] *identify from the first or second data* . . .

(Anderson Decl. Ex. 3, '364 Patent 22:27–52 (emphasis added).)[2]  Because the "second data defining at least one combination" is *stored*, then accessed "upon receiving a signal denoting" a visitor's visit, the combinations must be formed from bid data *prior* to the visitor's visit.  Claim 15 of the '364 patent recites:

> (a) receiving a plurality of bids in the form of: (i) a first offer price if a visitor to a communications node has a subset of attributes; and (ii) at least one supplemental offer price if the visitor has an individual attribute in addition to the subset of attributes, and *storing data identifying at least one combination of the first offer price and at least one of the supplemental offer price*; (b) *thereafter*, automatically, and individually *for a visitor visiting the communications node* . . . (ii) *identifying from the stored data*. . .

(Anderson Decl. Ex. 3, '364 Patent 23:21–24:1 (emphasis added).)  Because the claim recites "storing data identifying at least one combination" of bid data, and "thereafter" accessing those combinations at the time of a visitor's visit, the combinations must be formed from bid data *prior* to the visitor's visit.

Claim 1 of the '364 patent, rather than using the term "combination," instead requires accessing "pre-stored data" that has been "derived from a plurality of pre-collected bids":

> *Upon a visitor visiting* a communications node . . .(b) *accessing pre-stored data derived from a plurality of pre-collected bids*, the

---

[2] The "signal denoting a visitor visiting a communications node" in the example from the Introduction is the ad request from the search engine to the internet advertising system, indicating that a visitor's visit has begun.

bids being for delivery of an associated advertisement to a visitor visiting the communications node, each of which plurality of bids having been collected by receiving: (i) a first offer price if a visitor to the communications node has a subset of attributes; and (ii) at least one supplemental offer price if the visitor has an individual attribute in addition to the subset of attributes...

(Anderson Decl. Ex. 3, '364 Patent 21:9–24 (emphasis added).)  Claim 1 of the '637 patent also requires accessing data "derived from a plurality of pre-collected bids":

> *Upon a visitor visiting* a communications node . . . (b) *accessing* an electronic storage device containing *pre-stored data derived from a plurality of pre-collected bids*, the bids being for delivery of an associated advertisement to a visitor visiting the communications node, each of which plurality of bids having been collected by receiving: (i) a first offer price if a visitor to the communications node has a subset of attributes; and (ii) at least one supplemental offer price if the visitor has an individual attribute in addition to the subset of attributes...

(Anderson Decl. Ex. 4, '637 Patent 21:8–24 (emphasis added).)  Because the derived data in these two claims is "pre-stored" and subsequently accessed at the time of a visitor's visit, it must be "derived from" the bid data *prior* to the visitor's visit.  MFOF ¶¶ 10–12, 31.  Further, in light of the specification and file history discussed below, such "pre-stored data derived from a plurality of pre-collected bids" must include combinations of an advertiser's bids—which form the allegedly inventive basis for deciding which ads to display.

### C.     The Specification and File History Emphasize That Pre-Visit Combination Of Bids Is Essential to the Operation of the Invention.

The specification and file history of the AlmondNet patents make clear that the asserted claims of AlmondNet's patents all require pre-processing bid data prior to a visitor's visit.  The storing of bid combinations or data "derived from" the bids must occur prior to a visitor's visit, in order to access that data at the time of a visitor's visit.  During the prosecution of the AlmondNet patents, and in order to distinguish the prior art, AlmondNet stated to the examiner

5

that "the present invention . . . builds virtually all combinations of [profile] attributes with corresponding rational bids" submitted by an advertising distributor.  MFOF ¶ 16.

AlmondNet further emphasized that the combination of the advertiser's bids *must* occur prior to the visitor's visit.  AlmondNet distinguished prior art it claimed did not disclose "spreading . . . to form a number of combinations of attributes," calling spreading a "key aspect of the invention."  MFOF ¶ 21.  AlmondNet explained that the spreading step, "done *prior to the visitor's visit*, is *essential* because it allows the later 'selecting' step to be done in real time." MFOF ¶ 21 (emphasis added).  AlmondNet explained that if the spreading were not done *prior* to a visitor's visit, the invention would not work: "Without this step, sensible selection of a combination from an advertiser response is not viable in the economically critical real-time circumstances of Internet traffic banner placement and the like."  MFOF ¶ 21.  AlmondNet continued to make similar arguments with respect to the supplemental price language employed in the later-issued '364 and '637 patents ("pre-stored data derived from" bids that each include a base "first offer price" and "at least one supplemental price"), asserting that prior art references did not disclose pre-storing such data derived from bids.  MFOF ¶ 22–23.

AlmondNet's arguments to the examiner that the invention requires the combination of advertiser's bids prior to a visitor's visit are consistent with the patents' common specification. The first sentence in the Summary of the Invention of that specification states: "The method of the present invention facilitates expressing the rate structure for the individual advertisement as a function of a profile of the individual potential customer."  MFOF ¶ 13.[3]  The AlmondNet specification emphasizes that this pre-visit "rate structure"—expressed in terms of combinations

---

[3] This description of the present invention was relied upon by AlmondNet in distinguishing the prior art during prosecution:  "In contrast to Roth, the present application is directed towards a method for facilitating expressing the rate structure for the individual advertisement as a function of a profile of the individual potential customer."  MFOF ¶ 18.

of attributes that may match a visitor—is the novel aspect of the invention and was "lacking" in the industry.  MFOF ¶ 14.  The specification goes on to describe "Spreading the Price Offer" as creating profile combinations and determining the price of each profile combination prior to a visitor's request for an advertisement.  MFOF ¶ 15.

Critically, the specification at no point discloses creating rate structures or bid combinations on the fly, at the time a visitor visits a communications node.  MFOF ¶ 25.  AlmondNet's expert Michael Shamos, in his Rebuttal Expert Report Concerning Validity, claimed that the '436 Patent at 19:45–52 "discloses an embodiment in which only some bid processing occurs prior to a visit."  (Anderson Decl. Ex. 20 ¶ 90.)  This is a non sequitur.  The section of the specification to which Dr. Shamos refers concerns optimizations to the matching tree to improve performance—but that tree, which results from "spreading" to form combinations of bids, is still built ***prior*** to a user's visit.  MFOF ¶ 26–27.  Dr. Shamos's suggestion that the specification discloses "spreading during a visit" (Anderson Decl. Ex. 20 ¶ 92) is also unfounded.  MFOF ¶ 29.  In fact, the specification conveys just the opposite—that the spreading and formation of combinations of bids must be done prior to a visitor's visit so that the matching and pricing of responsive ads can be done rapidly at visit time.  MFOF ¶¶ 28.

The examiner, in stating his reasons for allowing each of the AlmondNet patents, expressly accepted AlmondNet's repeated arguments that pre-visit bid combinations or pre-stored data derived from bid data distinguished the claims from the prior art.  MFOF ¶ 24.  Concerning the '436 and '853 patents, the examiner stated that the prior art did not disclose pre-visit "spreading the attributes within the response to form a number of combinations of various attributes (to form groups of profiles comprising a plurality of attributes)," nor did the prior art disclose "determining the price of each combination of attributes by adding the individual prices

7

for each attribute within a combination" prior to a visitor's visit.  (Anderson Decl. Ex. 13, 09/473,078 File History ('436 Patent) at AN0000568–69; Anderson Decl. Ex. 14, 11/117,184 File History ('853 Patent) at AN0000773.)  Concerning the '364 and '637 patents, the examiner modified his conclusion only as necessary to track the claim language that embodied this feature, stating that the prior art did not disclose using **"**stored" data—processed prior to a visitor's visit—to select ads to return in response to an ad request.  (Anderson Decl. Ex. 15, 11/479,832 File History ('364 Patent) at AN0000983; Anderson Decl. Ex. 16, 12/273,478 File History ('637 Patent) at AN00007610 (emphasis added).)

> **D.** **AdCenter Does Not Combine Advertiser's Bids Prior To The Visitor's Visit.**

AlmondNet accuses Microsoft's adCenter of infringing its patents.  MFOF ¶ 34.  As explained in the following description of adCenter's operation, adCenter does not combine, spread, or otherwise derive data from advertiser's bids at any time prior to a visitor's visit to a web page hosting ads served by adCenter.

> **1.** **Prior to a Visitor's Visit, adCenter Stores at Most Uncombined Bid Data.**

AdCenter includes a "campaign management engine" with interfaces for advertisers to enter their ad listings and corresponding bids, MFOF ¶ 35, and a "delivery engine" that receives listings and bid data from campaign management, and then delivers ads to visitors in response to ad requests.  MFOF ¶ 36.  The bid data received by adCenter's delivery engine from the campaign management engine includes base key word bids, and any incremental bid percentage boosts that, if applicable to a particular ad request, will be applied to the base bid.  MFOF ¶ 37.

Base bids and any incremental boosts for each ad listing in adCenter are stored separately, and are not combined (arithmetically or otherwise) or processed until adCenter receives an ad request—for example, an ad request triggered by a visitor performing a search on

Microsoft's Bing search engine.  (That "visitor's visit" begins when the visitor clicks Bing's search button.)  MFOF ¶ 38.  The adCenter delivery engine receives updates to listings or new listings from the campaign management engine, MFOF ¶ 39–40, and stores the listing and bid data just as it was received.  MFOF ¶ 45.  No modifications, combinations, or computations based on the contents of those data structures are performed prior to a visitor's visit, when an ad request is made based on, for example, a visitor's submission of a Bing search query.  MFOF ¶ 41.

To be explicit, base bids and incremental bids in adCenter are not added together prior to a visitor's visit.  MFOF ¶ 42.  AdCenter does not form or store combinations of targeted attributes for an ad listing prior to a visitor's visit.  MFOF ¶ 43.  AdCenter does not derive any other data from the bid or listing data prior to a visitor's visit.  MFOF ¶ 44.

### 2. AdCenter Only Processes Bid Data in Response to a Visitor's Visit.

AdCenter only processes bid data when a visitor, browsing the web, accesses a page on a website which hosts adCenter ads.  MFOF ¶¶ 46–48, 57.  For example, if the visitor performs a search on Microsoft's Bing search engine, in response to this visitor's visit (which begins when the visitor clicks the search button), the Bing server makes a request to adCenter indicating that ads need to be provided.  AdCenter selects advertising listings responsive to that request, and forwards them to appear on the Bing search results page.  MFOF ¶ 46.  This visitor's Bing search query is the alleged "occurrence of a visitor visitation," in the language of the AlmondNet patent claims as identified in AlmondNet's infringement allegations, and in Dr. Shamos' report.[4]

---

[4] Dr. Shamos asserts that "[t]he visitor is, e.g., a user who submits a search query to Bing," and further states that the "spreading" "determining" steps of the claims must "occur before a visitor enters a search query."  (Anderson Decl. Ex. 18, Shamos Infringement Report ¶¶ 46, 48.)

As part of the process of selecting responsive listings, adCenter computes for the first time the sum of base bid and any increments that might apply based on characteristics of the visitor and/or the visitor's search request.  MFOF ¶ 47.[5]  AdCenter also performs algorithms, including a second-price auction, to rank ads, select ads, and set the price that will be charged to the advertiser if the visitor clicks on those ads, and forwards the ads to be placed on the page the visitor is visiting (for example, the Bing search results page).  MFOF ¶ 48.  If the visitor clicks on any of the advertisements, adCenter records the click and performs a series of verification steps, including click-fraud detection and checking whether the relevant advertiser is over budget, before charging that advertiser the amount determined via the second-price auction.  MFOF ¶ 49.

Bid increments, if any, are applied at the time of a visitor's visit in response to a request for an ad—not before.  MFOF ¶ 52.  The delivery engine starts with the base bid for an ad, will next apply targeting (if any), and will next separately apply any targeted bid increments (again, if any), all on the fly, in real time at the time of a visitor's visit.  MFOF ¶ 52.  For example, if the Bing searcher is identified as male, and the advertiser has elected to apply an increment to base bids for males, that increment is applied in response to the male visitor performing a search at Bing.  MFOF ¶ 53.  After applying any targeted bid increments, the base bid and incremental bids matching the ad request are added together and stored.  MFOF ¶ 54.  AdCenter only computes the sum of a base bid and incremental bids on the fly, at visit time.  MFOF ¶ 55.  The

---

[5] Note that at the time of a visitor's visit, when adCenter computes the sum of the base bid and any increments that match the ad request, this is only a *single* combination of attributes for an ad listing.  Namely, it is only those attributes from the listing that match the ad request.  Not only does this process *not* occur prior to visitor's visit, as required by the claims, this process does not meet the Court's claim construction of "spreading," which requires forming "more than one combination of attributes."  (Dkt. No. 50, Claim Construction Order 23.)

adCenter code that ranks listings and performs a second price auction to determine which ads to serve all runs *at the time* of a visitor's visit, and not before.  MFOF ¶ 56.

In summary, adCenter does not form targeting or bid combinations, spread attributes, derive data from bids, or determine prices of bid combinations prior to a visitor's visit.  MFOF ¶ 57.  The only processing of data from bids in adCenter occurs at the time of a visitor's visit. MFOF ¶¶ 46–56.[6]

## ARGUMENT

"Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  *ICU Med., Inc. v. Alaris Med. Sys.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009).  In the present motion, both the infringement and written description issues turn on whether the AlmondNet asserted claims require combining, spreading, or deriving of data from advertiser bids prior to a visitor's visit.

## I.      AdCenter Does Not Infringe the Asserted Claims of the '436 and '853 Patents.

If an accused product "does not meet every limitation of the asserted claims, there can be no infringement."  *Pass & Seymour, Inc. v. ITC*, 617 F.3d 1319, 1325 (Fed. Cir. 2010); *see Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly.  Thus, if any claim limitation is absent from the accused device, there is no literal infringement as a matter of law.").

---

[6] In any event, this processing (done at the time of a visitor's visit) does not meet the further limitations of AlmondNet's claims because adCenter does not select ads to return based on "highest price" or "greatest overall price for delivery."

**A.    The Asserted Claims of the '436 and '853 Patents Expressly Require Combining an Advertiser's Bids *Prior* to a Visitor's Visit.**

As outlined in Background Section A, above, the asserted independent claims of the '436 and '853 patents explicitly require, prior to a visitor's visit, the formation of a combination of attributes, and determining the price of each combination of attributes.  MFOF ¶ 7.  AlmondNet has conceded in its expert reports that these claims require bid combinations prior to a visitor's visit.  MFOF ¶¶ 59–60.[7]

**B.    AdCenter Does Not Combine Bids Prior to a Visitor's Visit.**

As outlined in Background Section D above, adCenter does not combine bids *prior* to a visitor's visit.  Base bids and incremental bids, if any, in adCenter are not added together prior to a visitor's visit.  MFOF ¶ 42.  AdCenter does not store combinations of targeted attributes for an ad listing prior to a visitor's visit.  MFOF ¶ 43.  AdCenter does not derive any other data from the bid or listing data prior to a visitor's visit.  MFOF ¶ 44.  AdCenter only performs calculations using bid data when a visitor, browsing the web, visits a page which hosts adCenter ads.  MFOF ¶¶ 46–56.  Because adCenter does not process an advertiser's base bid and targeting increments until a request for ad delivery (at the time of the visitor's visit), adCenter cannot infringe any asserted claim of the '436 and '853 patents.

---

[7] For example, Dr. Shamos states that "the steps of '436 claim 1 are divided into two groups, (a) and (b). The (a) steps are performed before a visitor visits a communications node. The (b) steps are initiated when a visitor visits a communications node. Therefore, the (a) steps must be performed before the (b) steps."  (Anderson Decl. Ex. 18, Shamos Infringement Report ¶ 47.) The "spreading" step is an "(a) step." (*Id.* ¶ 52.)

**II.     AdCenter Does Not Infringe the Asserted Claims of the '364 and '637 Patents.**

    **A.     The Asserted Claims of the '364 and '637 Patents Also Require Combining an Advertiser's Bids *Prior* to a Visitor's Visit.**

As explained in Background Section B, above, the asserted independent claims of the '364 and '637 patents do not use the term "prior."  Instead, the timing in the invention—in which bid data is processed prior to a visitor's visit—is expressed in alternative language requiring storing bid combinations or data "derived from" the bids, in order to access that data at the time of a visitor's visit.  The claims cover an invention with a necessary time sequence: first, and prior to a visitor's visit, form combinations of or data derived from bids; second, at the time of a visitor's visit, access that data to price and serve ads.

Independent claims 11 and 15 of the '364 patent recite "storing . . . data defining at least one combination" of bid data, and accessing that stored data at the time of a visitor's visit. (Anderson Decl. Ex. 3, '364 Patent 22:27–52, 23:31–41:1.)  This combination must be created prior to a visitor's visit.  MFOF ¶¶ 8–9.  Independent claim 1 of the '364 patent and independent claim 1 of the '637 patent require accessing "pre-stored data derived from a plurality of pre-collected bids … each of which plurality of bids having been collected by receiving: (i) a first offer price  … and (ii) at least one supplemental offer price."  (Anderson Decl. Ex. 3, '364 Patent 21:9–24; Anderson Decl. Ex. 4, '637 Patent 21:8–24.)  This pre-stored data must be derived from the bid data prior to a visitor's visit, when a request for an advertisement arrives.  MFOF ¶ 31.

    **1.     The Invention Described in the Specification Requires Pre-Visit Combining Of Bids.**

That AlmondNet's claims require the pre-visit formation of bid combinations is not surprising in view of the patents' common specification.  From the description of the invention's contribution over the prior art, MFOF ¶14, to the summary of the invention, MFOF ¶ 13, and throughout all disclosed embodiments, MFOF ¶ 15, the specification repeatedly and definitively

describes the invention as requiring the formation of advertiser bid combinations *prior* to a visitor's visit.

Because AlmondNet unequivocally defines its invention as one in which bids on attributes are combined prior to a visitor's visit, AlmondNet's asserted claims, including those claiming access of "pre-stored data derived from a plurality of pre-collected bids" must be so limited. *See ICU Med.*, 558 F.3d at 1374 ("it is also appropriate to rely heavily on the written description for guidance as to the meaning of the claims" because the claims "are part of a fully integrated written instrument consisting principally of [the] specification."); *Honeywell Int'l, Inc. v. ITT Indus.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) ("The public is entitled to take the patentee at his word and the word was that the invention is a fuel filter.")[8]; *SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1345 (Fed. Cir. 2001) ("Because the three SciMed patents make clear that the lumens referred to in the claims are all coaxial in structure, the district court was correct to construe the patents as disclaiming the dual lumen configuration [and] properly entered summary judgment [for defendant] on the issue of literal infringement"); *Toshiba Corp. v. Imation Corp.*, 2010 U.S. Dist. LEXIS 45653, at *19–20 (W.D. Wis. May 10, 2010) (where "[t]he specification makes clear that embossed and stamped pits have been tested to optimize disc capacity and work with the invention … it is appropriate to apply this limitation to the invention as a whole").

### 2. The File History Clearly And Unequivocally Defines The Invention As Requiring Pre-Visit Combining Of Bids.

AlmondNet also clearly, unequivocally, and repeatedly stated during prosecution that the combining of an advertiser's bids on attributes prior to a visit was essential to the invention. The

---

[8] In *Honeywell*, the Federal Circuit affirmed summary judgment of non-infringement based on the construction of a "fuel injection system component" as properly limited to a fuel filter in light of the patent's specification. 452 F.3d at 1318.

inventor explained to the examiner that the invention was novel because of its combining of bids prior to visit: "the present invention . . . builds virtually all combinations of [profile] attributes with corresponding rational bids." MFOF ¶ 16.[9]  The inventor repeatedly distinguished potentially invalidating prior art because that art did not disclose combining bids prior to a visitor's visit: "What Roth contributes is the creation of a specific bidding environment.  What Roth does not teach is the art of calculating a bid.  That is taught by the instant application." MFOF ¶ 17; *see also* MFOF ¶ 18.  The inventor made clear that "the art of calculating a bid" involved combining bids *prior* to the visitor's visit—otherwise, the invention would not work: "Without this step, sensible selection of a combination from an advertiser response is not viable in the economically critical real-time circumstances of Internet traffic banner placement and the like." MFOF ¶ 21.  These arguments were repeated by AlmondNet in distinguishing other references and in other responses to office actions and interviews with the examiner.  MFOF ¶ 22.[10]

AlmondNet is precluded from now in litigation applying its claims to a system or method that does not form combinations of an advertiser's bids prior to a visitor's visit.  *See Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1307 (Fed. Cir. 2007) (applicant's statement that invention was limited to local wireless "clearly disclaimed coverage of systems operating with a range greater than a 'few feet'"); *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1368–69 (Fed. Cir. 2007) (applicant's "statements [in prosecution] about

---

[9] *See also* MFOF ¶ 19("[T]he instant invention teaches an automated method for convolving (i.e. rolling together or coiling up) a bid based on attribute components and their contributory value to worth in the theoretical eye of the bidder."); MFOF ¶ 20 ("[T]he patentable aspect of the invention – i.e., a mechanism by which you can take various combinations of attributes (for example, coupling name with gender or income or age), and determine a price for sending an ad to a website visitor with those attributes.").

[10] These references include the Goldhaber, Hanson, and Dedrick references.

pelletizing were global—they applied to all the claims of the patent—and thus they served to limit all the claims"); *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1330–31 (Fed. Cir. 2007) ("Prosecution arguments like this one which draw distinctions between the patented invention and the prior art are useful for determining whether the patentee intended to surrender territory, since they indicate in the inventor's own words what the invention is not."); *Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) (where applicant's statement unambiguously reflects its own understanding of its inventions as being limited, "[w]e cannot construe the claims to cover subject matter broader than that which the patentee itself regarded as comprising its inventions and represented to the PTO").  *See also MarcTec, LLC v. Johnson & Johnson & Cordis Corp.*, 394 Fed. Appx. 685, 687–88 (Fed. Cir. 2010) ("Limitations clearly adopted by the applicant during prosecution are not subject to negation during litigation").  AlmondNet's statements during prosecution with regard to the scope of its inventions as disclosed in the common specification are relevant to all four patents.  *See Multi-Tech Sys.*, 357 F.3d at 1349–50.

Indeed, AlmondNet stated in prosecution of its patents that its invention was distinct from the prior art because it spread attributes to form bid combinations *prior* to a visitor's visit, and argued that it was impractical to combine bids on the fly, at the time of a visit.  MFOF ¶¶ 21–22.  Because AlmondNet so distinguished its own invention in prosecution—in a manner consistent both with the specification, MFOF ¶¶ 13–15, 28, and the examiner's ultimate reasons for allowance, MFOF ¶ 24—AlmondNet cannot now re-claim coverage of systems that, like adCenter, do not form bid combinations prior to a visitor's visit.  *See Multi-Tech Sys.*, 357 F.3d at 1349.

16

### 3.    Limitations in Dependent Claims Do Not Broaden the Scope of AlmondNet's Disclosed Invention.

That AlmondNet included the phrase "combinations of attributes and pre-calculated total offer prices" in dependent (rather than independent) claims of the '364 and '637 patents does not permit the independent claims to be read more broadly than their correct scope. *See Am. Calcar, Inc. v. Am. Honda Motor Co.*, 2011 U.S. App. LEXIS 13083, at *35–37 (Fed. Cir. June 27, 2011) (rejecting the patentee's argument that a message address limitation added by a dependent claim should not be read into the independent claim where the intrinsic record demonstrated the invention was limited to messages in a specific format); *Andersen Corp.*, 474 F.3d at 1370 ("[T]he written description and prosecution history overcome any presumption arising from the doctrine of claim differentiation."). AlmondNet's attempt to extract "combination" from the claims years after the filing date and after introduction of adCenter further counsels against application of claim differentiation to enlarge the scope of AlmondNet's disclosed invention. *See ICU Med.*, 558 F.3d at 1376 (affirming district court's decision that "reject[ed] this [claim differentiation] argument" and noting that "claim 13 was only added to the '592 patent in 2001, years after the filing date of the original patents, the issuance of the '866 and '862 patents, and the introduction of the allegedly infringing Alaris products").

Independent claim 1 of the '364 patent, and independent claim 1 of the '637 patents— claiming access to "pre-stored data ***derived from*** a plurality of pre-collected bids"—require combinations of an advertiser's bids prior to a visitor's visit because the invention as described and disclosed in the specification and file history requires as much. In any event, even without the reference to "combinations" in the independent claims, there must be *some* "data derived" prior to a visitor's visit to be accessed at the time of the visit—and adCenter has none. MFOF ¶¶ 43–44. The dependent claims cannot enlarge the scope of this disclosed invention.

**4.      The Doctrine Of Equivalents Cannot Vitiate The Required Pre-Visit Combining Of Bids, And AlmondNet May Not Set Aside Its Disclaimers Of Broader Scope.**

AlmondNet's infringement expert did not offer any opinion that the asserted claims are infringed under the doctrine of equivalents (*see* Anderson Decl. Ex. 18, Shamos Infringement Report), and Federal Rule of Civil Procedure 26(a)(2) precludes AlmondNet from now trying to insert an expert opinion not previously disclosed.  Even if AlmondNet attempted to make such a showing, that attempt should not forestall summary judgment of non-infringement for two reasons.  First, AlmondNet may not, through the doctrine of equivalents, completely remove the limitation that combinations of an advertiser's bids be formed prior to a visitor's visit: "[i]t is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).  *See also Demarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1332 (Fed. Cir. 2001) ("[T]he question of insubstantiality of the differences is inapplicable if a claim limitation is totally missing from the accused device.").

Second, AlmondNet's statements during prosecution bar any attempt by AlmondNet to evade the pre-visit combination of bids requirement.  "[I]f the patent-holder demonstrates that an amendment required during prosecution had a purpose unrelated to patentability, a court must consider that purpose in order to decide whether an estoppel is precluded.  Where the patent-holder is unable to establish such a purpose, a court should presume that the purpose behind the required amendment is such that prosecution history estoppel would apply." *Warner-Jenkinson*, 520 U.S. at 40–41; *Litton Sys. v. Honeywell, Inc.*, 140 F.3d 1449, 1458 (Fed. Cir. 1998) ("[E]ven arguments made during prosecution without amendments to claim language—if sufficient to evince a clear and unmistakable surrender of subject matter—may estop an applicant from

18

recapturing that surrendered matter under the doctrine of equivalents."). The doctrine of equivalents is doubly inapplicable because AlmondNet's arguments that the invention requires combination of bids prior to a visitor's visit was made to overcome prior art and was "sufficient to evince a clear and unmistakable surrender of subject matter." *Litton Sys.* 140 F.3d at 1458.

**B.    AdCenter Does Not Combine Bids Prior to a Visitor's Visit.**

As outlined in Background Section C above and explained in Argument Section I.B, adCenter does not combine bids prior to a visitor's visit. Base bids and incremental bids in adCenter are not added together prior to a visitor's visit. MFOF ¶ 42. AdCenter does not store combinations of targeted attributes for an ad listing prior to a visitor's visit. MFOF ¶ 43. AdCenter does not derive any other data from the bid or listing data prior to a visitor's visit. MFOF ¶ 44. AdCenter only processes bid data when a visitor, browsing the web, visits a page which hosts adCenter ads. MFOF ¶¶ 46–56. Because adCenter does not combine an advertiser's base bid and targeting increments until a request for ad delivery (at the time of the visitor's visit), adCenter does not infringe the asserted claims of the '364 and '637 patents.

**C.    Because adCenter Does Not Directly Infringe, AlmondNet's Indirect Infringement Claims Also Fail.**

AlmondNet's indirect infringement claims are necessarily premised on the proposition that the use of adCenter directly infringes claims of the '364 patent. (*See* Anderson Decl. Ex. 18, Shamos Infringement Report ¶¶ 140–41.) As explained above, use of adCenter does not directly infringe any of the asserted claims of the '364 patent. Because the use of adCenter does not directly infringe, Microsoft cannot indirectly infringe these claims even if it induces or contributes to such use.[11]

---

[11] Moreover, AlmondNet has offered no expert opinion demonstrating how any party other that Microsoft directly infringes claims of the AlmondNet Patents—only Microsoft actions are accused. AlmondNet's expert Michael Shamos, in his infringement report, does not explain how

**III.    If the Asserted Claims of the '364 and '637 Patents Do Not Require Combining Bids Prior to a Visitor's Visit, They Are Invalid Under 35 U.S.C. § 112(1).**

Whether a patent is invalid for failure to meet the written description requirement of 35 U.S.C. § 112(1) is a question of fact. *ICU Med.*, 558 F.3d at 1376. "To satisfy the written description requirement, a patent applicant must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention. The invention is, for purposes of the written description inquiry, whatever is now claimed." *Id.* at 1376–77 (quotation marks omitted). The Federal Circuit affirmed in *ICU* the district court's grant of summary judgment of invalidity under the written description requirement as to claims that omitted a spike element from the claimed medical valve because "a person of skill in the art would not understand the inventor … to have invented a spikeless medical valve." *Id.* at 1378.

**A.    The Purpose Of The Written Description Requirement Is To Ensure That Claims Do Not Overreach The Specification.**

In order to satisfy the written description requirement, the "claims must be no broader than the supporting disclosure" and "a narrow disclosure will limit claim breadth." *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F. 3d 1473, 1480 (Fed. Cir. 1998). "[T]he purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification." *ICU Med.*, 558 F.3d at 1376–77 (citations omitted). "While it is legitimate to amend claims or add claims to a patent application purposefully to encompass devices or processes of others, there must be support for such amendments or additions in the originally filed application." *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235,

---

Bing visitors or advertising distributors directly infringe any of the claims, and undertakes no separate, claim by claim analysis showing how a Bing visitor's or advertising distributor's acts directly infringe. (*See* Anderson Decl. Ex. 18, Shamos Infringement Report ¶¶ 140–49.)

1247–48 (Fed. Cir. 2002).[12]  "Amended claims that introduce elements or limitations which are

not supported by the as filed disclosure violate the written description requirement."  *Fisher-*

*Price, Inc. v. Safety 1st, Inc.*, 109 Fed. App'x 387, 393 (Fed. Cir. 2004).

**B.  There Is Nothing In The Specification That Describes A System Or Method That Combines Bids At The Time Of The Visitor's Visit.**

The common specification to the AlmondNet patents at no point discloses a system or

method to create rate structures or bid combinations at the time a visitor visits a communications

node.  MFOF ¶ 25.  Contrary to a suggestion advanced in AlmondNet's rebuttal expert report of

validity, the common specification does not disclose (at '436 Patent 19:34–20:10) an

embodiment in which only some bid processing occurs prior to a visit, MFOF ¶ 26, nor does the

specification disclose an embodiment in which spreading occurs during a visit.  MFOF ¶ 29.

The portion of the specification identified by AlmondNet's expert has no disclosure of visit-time

bid calculation, combination, or spreading.  MFOF ¶ 26.  Instead, that portion of the

specification discusses how building the matching tree of spread attributes may become complex

and costly, and presents possible constraints and optimizations used pre-visit to limit the size and

complexity of the tree.  MFOF ¶ 27.  Every optimization discussed is an optimization to the pre-

visit tree-building process, not a part of a visit-time bid combination.

The common specification to the AlmondNet patents at no point discloses a method to

calculate the total bid in real time (i.e. at the time of a visitor's visit).  MFOF ¶ 30.  The

disclosures in the common specification do not convey to one of ordinary skill that at the time of

the filing of the applications, the inventor had possession of a method or system that formed bid

---

[12] In reversing the district court's judgment that a claim was supported by its specification's written description, the Federal Circuit stated that "the originally filed application, which is devoid of any mention or even implication that the two chemicals can be applied in a spaced, sequential manner, does not support the later-added claim 33."  *PIN/NIP*, 304 F.3d at 1247–48.

combinations and determined prices only in real time, at the time of a visitor's visit.  MFOF ¶ 32. Further, the written description of the invention in the common specification does not indicate to one of ordinary skill that the inventor had claimed as his invention a method or system that formed bid combinations and determined prices only in real time, at the time of a visitor's visit. MFOF ¶ 33.

As a result, if claim 1 of the '364 patent and claim 1 of the '637 patent reach systems that form bid combinations and determine prices only in real time, at the time of a visitor's visit, those claims (and their dependent claims) are invalid for failure to satisfy the written description requirement.  Under such an interpretation, these claims are invalid because they substantially overreach the scope of AlmondNet's contribution as described in the specification.  *See ICU Med.*, 558 F.3d at 1376–77.  There is no support in the common specification for AlmondNet's attempt to confine the pre-visit combination of bids to dependent claims in order to capture systems that, like adCenter, do not combine bids prior to a visitor's visit.  If independent claim 1 of the '364 patent and independent claim 1 of the '637 patent reach such systems, the claims are invalid for failure to comply with the written description requirement of Section 112.

### CONCLUSION

Microsoft adCenter does not infringe any of the asserted claims of the '436 and '853 patents, because those claims explicitly require spreading to form combinations, and determining prices of those combinations, ***prior to a visitor's visit***.  The adCenter source code and the declaration of Microsoft employee Kenneth Pierce demonstrate that adCenter does not combine, spread, or otherwise derive data from advertiser bids prior to a visitor's visit—any such activity at most occurs only at the time of a visitor's visit, and not before.  For the same reason, adCenter does not infringe any of the asserted claims of the '364 and '637 patents, because those claims also require combining or otherwise deriving data from advertiser bids ***prior to a visitor's visit***.

22

Any claim of the '364 or '637 patents that does not require combining data from advertiser bids prior to a visitor's visit is invalid for failure to comply with the written description requirement.

Accordingly, Microsoft respectfully requests that the Court grant summary judgment of non-infringement of all of the AlmondNet asserted claims.

In the alternative, Microsoft respectfully requests that the Court grant summary judgment of non-infringement of all asserted claims of the '436 and '853 patents; grant summary judgment of non-infringement of all asserted claims of the '364 and '637 patents that require forming combinations prior to a visitor's visit; and grant summary judgment of invalidity of any asserted claims of the '364 patent and the '637 patent that *do not* require forming combinations prior to a visitor's visit, for failure to comply with 35 U.S.C. § 112(1).

August 5, 2011

Respectfully submitted,

/s/ Bryan K. Anderson

David E. Killough
davkill@microsoft.com
MICROSOFT CORPORATION
1 Microsoft Way
Redmond, Washington 98052
Telephone: 425-703-8865
Facsimile:  425-869-1327

Christopher G. Hanewicz
CHanewicz@perkinscoie.com
Perkins Coie
1 East Main Street, Suite 201
Madison, WI 53703
Telephone: 608-663-7468
Facsimile: 608-663-7499

David T. Pritikin
dpritikin@sidley.com
Richard A. Cederoth
rcederoth@sidley.com
John W. McBride
jwmcbride@sidley.com
Herman F. Webley
hwebley@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone:  312-853-7000
Facsimile:  312-853-7036

Bryan K. Anderson
bkanderson@sidley.com
Sidley Austin LLP
555 California St.  Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

**ATTORNEYS FOR DEFENDANT**
**MICROSOFT CORPORATION**