# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ALMONDNET, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 10-CV-298 |
| MICROSOFT CORP., | ) |
| Defendant. | ) |

**ALMONDNET'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,632,248**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. LEGAL STANDARDS .........................................................................................1

    A. Summary Judgment Standards..................................................................1

    B. Patent Infringement Standards...................................................................3

III. ARGUMENT.........................................................................................................4

    A. Post-Search Does Not Infringe The '248 Patent Because It Does Not Store Customization Information On The Server Computer..............................4

        1. Microsoft is trying to recapture what it disclaimed during prosecution of the '248 patent........................................................4

        2. The temporary cache of a cookie is not "storage" within the meaning of the '248 patent. ...........................................................6

    B. Microsoft Has Presented No Evidence Of Direct Infringement Of Claims 1-4, 8-10, And 17 Of The '248 Patent. ......................................................9

    C. Microsoft Has Presented No Evidence Of Indirect Infringement..........................11

IV. CONCLUSION....................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*,
  501 F.3d 1307 (Fed. Cir. 2007) .................................................................................. 3, 10

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................................ 2

*Barmag Barmer Maschinenfebrik AG v. Murata Mach. Ltd.*,
  731 F.2d 831 (Fed. Cir. 1984) ........................................................................................ 2

*BMC Res., Inc. v. Paymentech, L.P.*,
  498 F.3d 1373 (Fed. Cir. 2008) ................................................................................ 3, 12

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................................ 2

*Desper Prods. Inc. v. QSound Labs., Inc.*,
  157 F.3d 1325 (Fed. Cir. 1998) .................................................................................. 2, 9

*Exigent Tech., Inc. v. Atrana Sols., Inc.*,
  442 F.3d 1301 (Fed. Cir. 2006) ...................................................................................... 2

*Fujitsu Ltd. v. Netgear, Inc.*,
  No. 07-cv-710-bbc, 2009 WL 3047616 (W.D. Wi. Sept. 19, 2009) (Crabb, J.) *aff'd in relevant part by* 620 F.3d 1321, 1326-29 (Fed. Cir. 2010) ................................................... 3

*Gentry Gallery, Inc. v. Berkline Corp.*,
  134 F.3d 1473 (Fed. Cir. 1998) ...................................................................................... 2

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  131 S.Ct. 2060 (2011) .............................................................................................. 4, 13

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
  438 F.3d 1354 (Fed. Cir. 2006) .................................................................................... 12

*Joy Techs., Inc. v. Flakt, Inc.*,
  6 F.3d 770 (Fed. Cir. 1993) ............................................................................................ 3

*Lucent Techs. Inc. v. Gateway, Inc.*,
  Nos. 02CV2060-B(CAB), 03CV0699-B(CAB), 03CV1108-B(CAB), 2007 WL 925510 (S.D. Cal. Mar. 21, 2007) ................................................................................................... 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ........................................................................................................ 2

*Mirror Worlds, LLC v. Apple, Inc.*,
   No. 6:08 CV 88, 2011 WL 1304488 (E.D. Tex. Apr. 4, 2011) ............................................. 3, 10

*Novartis Corp. v. Ben Venue Labs., Inc.*,
   271 F.3d 1043 (Fed. Cir. 2001) ................................................................................................ 2

*Pall Corp. v. PTI Techs. Inc.*,
   259 F.3d 1383 (Fed. Cir. 2001) ............................................................................................ 4, 5

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................................................................ 6

*Ricoh Co. v. Quanta Computer Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008) .............................................................................................. 10

*Seachange Int'l, Inc. v. C-COR Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005) ................................................................................................ 3

*Springs Window Fashions LP v. Novo Industries, L.P.*,
   323 F.3d 989 (Fed. Cir. 2003) .............................................................................................. 4, 6

*TecSec, Inc. v. Int'l Bus. Machs. Corp.*,
   769 F. Supp. 2d 997 (E.D. Va. 2011) ......................................................................... 3, 10, 11

*Vita-Mix Corp. v. Basic Holding, Inc.*,
   581 F.3d 1317 (Fed. Cir. 2009) .............................................................................................. 13

*Warner-Jenkinson Co. v. Hilton Davis Corp.*,
   520 U.S. 17 (1997) .................................................................................................................... 3

**Statutes**

35 U.S.C. § 271(c) ............................................................................................................................. 4

**Rules**

Fed. R. Civ. P. 56(c) ......................................................................................................................... 2

iii

I.  **INTRODUCTION**

Microsoft's claim that AlmondNet infringes U.S. Patent No. 6,632,248 ("the '248 patent") relies on a construction of the claim limitations relating to "storing customization information *on the server*" that is unsupported by the intrinsic evidence and contrary to Microsoft's express disclaimers made during prosecution of the patent.  Microsoft distinguished the invention of the '248 patent over the prior art by emphasizing the storage of customization information on a *server*, rather than in a cookie on the user's computer; this limitation was critical to the allowance of the '248 patent.  Yet Microsoft continues to assert the '248 patent against AlmondNet's Post-Search product, which—to the extent it stored any customization information—did so in a cookie on the user's computer and not on a server.  To try and avoid this clear disclaimer, Microsoft contends that temporary caching of information on the server for up to nine minutes meets the limitations of the '248 patent related to storage of information on a server.  But temporary caching does not satisfy the meaning of "storage" within the context of the '248 patent.

Moreover, even under Microsoft's construction of the "storing customization information on the server" limitations, Microsoft cannot prove infringement of several method claims because its allegations are merely hypothetical and are unsupported by any actual evidence of infringement.  And Microsoft has not—and cannot—present any evidence in support of the allegations of indirect infringement it made in its counterclaim.  Therefore, AlmondNet asks this Court to grant it summary judgment of non-infringement.

II. **LEGAL STANDARDS**

    A.  **Summary Judgment Standards**

Summary judgment "is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Gentry Gallery, Inc. v. Berkline*

*Corp.*, 134 F.3d 1473, 1476 (Fed. Cir. 1998); Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). Summary judgment is "as appropriate in a patent case as in any other." *Barmag Barmer Maschinenfebrik AG v. Murata Mach. Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984). Although legitimate evidentiary inferences must be drawn in the nonmovant's favor, Microsoft cannot create a genuine dispute as to any material fact merely by stating that a fact is challenged; it must show the existence of a genuine dispute for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Here, summary judgment should be granted because "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Desper Prods. Inc. v. QSound Labs., Inc.,* 157 F.3d 1325, 1338 (Fed. Cir. 1998) (affirming summary judgment of non-infringement).

"Summary judgment must be granted against a party who has failed to introduce evidence sufficient to establish the existence of an essential element of that party's case, on which the party will bear the burden of proof at trial." *Novartis Corp. v. Ben Venue Labs., Inc.,* 271 F.3d 1043, 1046 (Fed. Cir. 2001). Because Microsoft, not AlmondNet, bears the burden of proof on the issue of infringement, AlmondNet need not produce evidence showing the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rather, AlmondNet's burden is discharged by pointing out that there is an absence of evidence to support Microsoft's case. *See, e.g., id.; Exigent Tech., Inc. v. Atrana Sols., Inc.,* 442 F.3d 1301, 1307-09 (Fed. Cir. 2006). Microsoft must come forward with evidence demonstrating a genuine dispute regarding a material fact requiring trial. *Anderson*, 477 U.S. at 256-57.

### B.     Patent Infringement Standards

"A determination of infringement is a two-step process.  The court must first correctly construe the asserted claims, and then compare the properly construed claims to the allegedly infringing devices, systems, or methods."  *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1377 (Fed. Cir. 2005).  In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused products necessarily infringe the method claim.  *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007); *see also Mirror Worlds, LLC v. Apple, Inc.*, No. 6:08 CV 88, 2011 WL 1304488, at *6-8, 12 (E.D. Tex. Apr. 4, 2011) (granting JMOL of no direct infringement because plaintiff patentee failed to show any actual performance of the claimed method); *TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 769 F. Supp. 2d 997, 1014 (E.D. Va. 2011) (granting summary judgment of no direct infringement because plaintiff patentee failed to show use of patented method); *Fujitsu Ltd. v. Netgear, Inc.*, No. 07-cv-710-bbc, 2009 WL 3047616, at *26-28 (W.D. Wi. Sept. 19, 2009) (Crabb, J.) (granting summary judgment of non-infringement because "speculation is not enough to prove direct infringement") *aff'd in relevant part by* 620 F.3d 1321, 1326-29 (Fed. Cir. 2010) ("Unless the claim language only requires the capacity to perform a particular claim element, we have held that it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement").

Direct infringement of a method claim requires a single party to perform within the United States every step of the claim.  *BMC Res., Inc. v. Paymentech, L.P.,* 498 F.3d 1373, 1378-79 (Fed. Cir. 2008) (citing *Warner-Jenkinson Co. v. Hilton Davis Corp.*, 520 U.S. 17 (1997)); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993).  Before there can be any finding of indirect infringement, the patentee must show an instance of indirect infringement.  *BMC Res.*, 498 F.3d at 1379.  A party may only be liable for contributory infringement if the accused

3

infringer knows the accused product "to be especially made or especially adapted for use in an infringement of such patent" and if the accused product is "not a stable article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c).  A party may only be liable for inducing infringement if the patentee has "knowledge [by the accused indirect infringer] that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011).

### III.    ARGUMENT

#### A.    Post-Search Does Not Infringe The '248 Patent Because It Does Not Store Customization Information On The Server Computer.

Each asserted claim of the '248 patent requires that "customization information" be stored on a server computer.  (AlmondNet's Proposed Findings of Fact ("APFF"), filed herewith, ¶¶ 25, 27-30, 32-34.)  Microsoft admits that Post-Search stored the alleged "customization information" in a cookie on the client computer, and only temporarily cached that information on a server computer.[1]  Because Microsoft disclaimed storage of customization information in a cookie on the client computer during prosecution of the '248 patent, and because a temporary cache is not storage within the meaning of the '248 patent, this Court should grant AlmondNet summary judgment that it does not infringe the '248 patent.

#### 1.    Microsoft is trying to recapture what it disclaimed during prosecution of the '248 patent.

"It is well established that 'the prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.'" *Springs Window Fashions LP v. Novo Industries, L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003) (quoting *Pall Corp. v. PTI Techs. Inc.*, 259 F.3d 1383, 1392 (Fed. Cir. 2001)).  "The public notice function of a patent

---

[1]    AlmondNet no longer offers the Post-Search product, and has not since December 2008.  (APFF ¶ 47.)

4

and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent. A patentee may not state during prosecution that the claims do not cover a particular device and then change position and later sue a party who makes that same device for infringement." *Id.* at 995.

During prosecution of the '248 patent, Microsoft distinguished the invention of the '248 patent from the Beta version of a customizable msn.com web page ("Beta") that Microsoft released more than one year before the application that led to the '248 patent was filed. (*See generally* APFF ¶¶ 39-45.) As Microsoft repeatedly told the U.S. Patent and Trademark Office, the distinguishing feature of the '248 patent was that it stored customization information at the server, not in a cookie on the user's computer like the Beta did:

- "The Beta did have a GUID stored in a cookie. However, the GUID was only used in a log file to track the pages users were accessing. The GUID was not used to store customization information, as described in the present application. As a practical matter, the distinction between the claimed invention and the Beta is significant. With the Beta, the customization information is limited to the amount of data that could be stored within the cookie. … With the claimed invention, the client passes a small amount of data that includes a unique user identifier, and the server uses the identifier to obtain the customization information stored on the server." (APFF ¶ 41.)

- "The Beta specification makes clear that customization information is stored in a cookie on the client computer." (APFF ¶ 42.)

- "[T]he Beta of the customizable start page had the user's custom setting stored in a cookie residing on the <u>client</u> computer. The user's custom settings did not reside on the <u>server</u> computer. Consequently, the server computer did not correlate information passed in the cookie to customization information stored on the server." (APFF ¶ 43.)

- "The claimed invention avoids the drawbacks of the above-described technique [storing customization information in a cookie] by storing the customization information on a <u>server</u> computer, rather than the <u>client</u> computer. The present invention still uses cookies, but all of the customization information is not stored in the cookies. Instead, the cookie contains a unique user identifier that is passed to the server. The server uses the unique identifier to access the user's customization information stored on the server computer." (APFF ¶ 44.)

- "Appellants [Microsoft] maintained that the Beta version used Cookies stored on the client computer which is different from the claimed invention." (APFF ¶ 45.)

5

These repeated statements distinguishing the '248 patent from the Beta shows a clear disclaimer of claim scope—that the '248 patent does not cover a product that stores "customization information" in a cookie.

Under the law of argument estoppel, Microsoft may not state during prosecution that the claims do not cover a product that stores customization information in a cookie and then change position and later sue a party who makes a product storing customization information in a cookie for infringement. *See Springs Window*, 323 F.3d at 995. But that is precisely what Microsoft is doing here. AlmondNet's accused Post-Search product stored the alleged "customization information"—a user's search history—in a cookie on the user's computer. (APFF ¶ 48.) Microsoft does not dispute this fact. (APFF ¶ 49.) Because Microsoft is improperly trying to reclaim claim scope it disclaimed during prosecution, this Court should properly grant AlmondNet summary judgment of non-infringement.

### 2. The temporary cache of a cookie is not "storage" within the meaning of the '248 patent.

In an effort to get around its clear disclaimer of a system like Post-Search that stored "customization information" in a cookie on the user's computer, Microsoft points to the temporary caching of a user's cookie on the Post-Search server as satisfying the "storing customization information on the server" limitations. A temporary cache is not "storage" within the meaning of the '248 patent, however, and thus Post-Search still does not meet this limitation.

"[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005). The purpose of "storing" customization information within the context of the '248 patent is so that it can later be used to

6

produce a customized document *whenever* the user returns to a particular network address. (APFF ¶ 14-15, 20-21, 74.) As the Abstract states:

> User-selected customization information for a network (e.g., HTML) document is stored at a server with reference to user identifying information that uniquely identifies the user. *Whenever* the user navigates back to the network address of the HTML document, the user is identified automatically and receives a customized HTML document formed in accordance with the customization information.

(APFF ¶ 14.) Microsoft's expert, Dr. Houh, agrees that this is the purpose of the '248 patent, stating:

> The '248 patent is generally directed towards a server, such as a web server, which customizes documents, such as a web page, based on user preferences for different users visiting the same network address, for example a web page URL. Users return selected customization options to the server for the pages that they view on a specific web server. These preferences are retained between a user's visits to the web server. *On subsequent visits* to the web server by a particular user, the web server will customize the page based on preferences saved for that user.

(APFF ¶ 74.)

The specification also describes the purpose and process of the '248 patent. A user navigates to a network address "and is offered the ability to customize the HTML document." (APFF ¶ 16.) The user then selects customization options, and that customization information is stored at the server in connection with a unique user identifier. That unique user identifier is also returned to the user. (APFF ¶¶ 17-19.) Then, "*[w]henever* the user navigates back to the network address associated with the customizable HTML document," the user's browser passes the cookie to the server, which correlates the user ID in the cookie with the customization options stored at the server to return a document customized according to those options to the user. (APFF ¶¶ 20-21.)

In other words, the '248 patent requires "storage" of the customization information such that it can be retrieved *whenever* the user returns to that network address. There is no dispute

7

that the only place Post-Search stored "customization information" such that it could be retrieved *whenever* the user returned to a particular network address was in the cookie stored on the user's computer. (APFF ¶¶ 48-50.) Because the '248 patent requires storage on a server, not the user's computer, this does not satisfy the claims.

Instead, Microsoft points to the temporary storage of information in a cache on the Post-Search server as satisfying the "storing customization information on the server" limitations. (APFF ¶¶ 84-89.) Maintaining information on a server in a temporary cache, however, is not "storage" within the meaning of the claims. The information would *not* be available on the Post-Search server *whenever* the user visits the network address, as the patent contemplates, but rather would only be available for the duration the temporary cache was maintained. The Post-Search cache lasted nine minutes, *at a maximum*.[2] (APFF ¶ 84.) In order for a user's search information to be pulled from the cache on the server, the user must have visited the same network address twice within the nine minutes the cache survived.

Under an interpretation of the patent that would allow temporary caching to satisfy the "storing customization information at the server" limitations, all of the purported benefits—what the inventors intended to achieve—of the '248 patent would be lost. Microsoft's interpretation would require that a user reenter the customization information every time the user visited a network address after more than nine minutes. This interpretation also essentially reads out the "storing" limitations and tries to recapture claim scope (storing customization information in a cookie) that it clearly disclaimed during prosecution, as it would allow long-term storage somewhere other than the server. "Post-hoc, litigation-inspired argument cannot be used to

---

[2] AlmondNet disputes whether this cache lasted for 9 minutes or for only 30 seconds. For purposes of this motion only, however, AlmondNet accepts as true that the cache lasted for 9 minutes, as stated by Microsoft's expert. (APFF ¶ 84.)

reclaim subject matter that the public record in the PTO clearly shows has been abandoned." *Desper Prods*, 157 F.3d at 1340.

There is no dispute, for purposes of this motion, about the operation of Post-Search. There is only a question of law—whether temporary caching constitutes "storing customization information at the server" under the proper construction of that phrase in the context of the '248 patent. Based upon the intrinsic evidence—the claims, the specification and the prosecution history—it does not. Therefore, this Court should grant AlmondNet summary judgment of non-infringement.

### B. Microsoft Has Presented No Evidence Of Direct Infringement Of Claims 1-4, 8-10, And 17 Of The '248 Patent.

Even if this Court were to agree with Microsoft that temporary caching could satisfy the "storing customization information at the server" limitations, summary judgment is still appropriate for claims 1-4, 8-10 and 17.[3] Although Microsoft identified how use of Post-Search *could* satisfy each claim limitation, they did not identify evidence of AlmondNet *actually* performing the methods claimed in claims 1-4, 8-10, and 17. In particular, Dr. Houh opines that AlmondNet infringes claims 1-4, 8 and 17 when a user first accesses a Post-Search server and then the visitor's "subsequent access to the Post-Search server occurs within the time out period of 9 minutes from the last visit to the Post-Search server." (APFF ¶¶ 85-89.) However, Dr. Houh does not support his opinion with any evidence of anyone accessing the Post-Search server within that nine minute period. (APFF ¶ 90.) Accordingly, Microsoft has not presented any evidence of direct infringement by AlmondNet of claims 1-4, 8-10 and 17 of the '248 patent.

---

[3] Microsoft has not presented any expert evidence regarding infringement of claims 9-10, and stated in correspondence that it is no longer asserting those claims. (APFF ¶ 11.) Microsoft has not stipulated to the dismissal of those claims at this time, however, so AlmondNet moves for summary judgment on those claims as well.

9

Because claims 1-4, 8-10 and 17 are method claims, AlmondNet cannot directly infringe them merely by offering Post-Search because "a party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)." *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008). Rather, Microsoft's burden is to prove that AlmondNet actually used Post-Search to perform every step of claims 1-4, 8, and 17, which it has not done. Without proof that AlmondNet actually performed every step of the claimed methods, Microsoft's allegations that AlmondNet itself directly infringed claims 1-4, 8, and 17 of the '248 patent under 35 U.S.C. § 271(a) must fail. *ACCO Brands,* 501 F.3d at 1313; *Mirror Worlds,* 2011 WL 1304488, at *6-8, 12; *TecSec*, 769 F. Supp. 2d at 1010.

In *Mirror Worlds*, for instance, despite obtaining a jury verdict of infringement, the court granted summary judgment as a matter of law of non-infringement because the patentee failed to show that the defendant had actually performed the claimed method steps. *Mirror Worlds*, 2011 WL 1304488, at *6, 12. The court stated that "direct infringement of a method claim cannot be determined on speculation, assumptions, or inferences." *Id.* at *8. Similarly, in *TecSec*, the court granted the alleged infringer's motion for summary judgment of no infringement because "TecSec has utterly failed to come forward with any evidence that [the alleged infringer] itself performed any of the steps of the method claims." *TecSec*, 769 F. Supp. 2d at 1010.

Here, Microsoft's contentions and their expert's report contained naked assertions with no supporting evidence. Microsoft's references only a single Internet article in support of its infringement contentions, with no evidence of actual use of Post-Search in any fashion. (APFF ¶ 60.) And while Microsoft's expert opines that Post-Search infringes claims 1 and 17 (and their dependent claims) if Post-Search receives two requests from a user within nine minutes, he does

10

not offer any evidence that has actually happened.  (APFF ¶¶ 89-90.)  Thus Microsoft has not presented any evidence that any Post-Search server was accessed twice by the same visitor within a period of nine minutes, such that the visitor's alleged "customization information" was stored on and then retrieved from the Post-Search server rather than from the cookie on the visitor's own computer.  (*Id.*)  That is the only usage scenario under which Microsoft contends Post-Search performs all steps of claims 1-4, 8-10 and 17 of the '248 patent, and thus it is the only usage scenario Microsoft contends infringes the '248 patent.  Furthermore, claims 1-4, 8-10 and 17 refer to a "subsequent accessing" of the network address.  As AlmondNet's corporate witness explained, the purpose of the cache was to deal with multiple requests coming in during a single visit to a network address.  (APFF ¶ 57.)  It was not designed for the scenario where a user visits a network address, navigates away, then subsequently returns to that address—all within nine minutes.

Microsoft's failure to come forward with evidence that any visitor accessed a Post-Search server in the allegedly infringing manner means that Microsoft has also failed to present any evidence that AlmondNet's Post-Search ever performed each step of claims 1-4, 8-10 and 17.  As such, AlmondNet is entitled to summary judgment that AlmondNet does not directly infringe claims 1-4, 8-10 and 17 of the '248 patent.  *See, e.g., TecSec*, 769 F. Supp. 2d at 1010.

### C. Microsoft Has Presented No Evidence Of Indirect Infringement.

In its counterclaim for infringement of the '248 patent, Microsoft alleges that "AlmondNet has been and/or is directly infringing and/or inducing others to infringe and/or contributing to the infringement of the '248 patent."  (APFF ¶ 7.)  However, Microsoft has not identified any evidence in support of its allegations of indirect infringement.

*First*, Microsoft has not identified or presented any evidence regarding any alleged direct infringers other than AlmondNet.  In its Infringement Contentions, Microsoft states only that the

11

asserted claims are "infringed by at least AlmondNet's Post-Search advertising service ('the accused instrumentality')" and that "[e]ach element of each asserted claim is found either literally or under the doctrine of equivalents in the accused instrumentality." (APFF ¶ 9.) In Dr. Houh's expert report, he states "it is my opinion that Post-Search infringes" the asserted claims of the '248 patent. (APFF ¶ 69.) Dr. Houh does not identify any other alleged direct infringer. (APFF ¶¶ 70-73.) Without even an allegation of direct infringement by someone other than AlmondNet, Microsoft's allegations of indirect infringement cannot survive. *See BMC Res.*, 498 F.3d at 1379 ("Indirect infringement requires, as a predicate, a finding that some party among the accused actors has committed the entire act of direct infringement.").

*Second*, Microsoft has not offered any explanation or presented any evidence regarding its allegation of indirect infringement. In its infringement contentions, Microsoft makes no statements regarding indirect infringement at all, let alone anything actually explaining its theories as to how AlmondNet may indirectly infringe the '248 patent. (APFF ¶ 67.) Similarly, Microsoft's expert is silent on the issue of indirect infringement. (APFF ¶¶ 71-73.)

*Third*, Microsoft cannot show that Post-Search has no substantial non-infringing uses, and thus AlmondNet cannot be liable for contributory infringement. Microsoft bears the burden of showing that Post-Search has no substantial non-infringing use. *Lucent Techs. Inc. v. Gateway*, *Inc.*, Nos. 02CV2060-B(CAB), 03CV0699-B(CAB), 03CV1108-B(CAB), 2007 WL 925510, at *2 (S.D. Cal. Mar. 21, 2007) (citing *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006)). Microsoft cannot meet this burden because the undisputed facts show that Post-Search has a substantial non-infringing use—using the cookie to store the "customization information." (APFF ¶¶ 48-49.) This substantial non-infringing use is sufficient as a matter of law to defeat any allegation by Microsoft that AlmondNet contributorily

infringes the '248 patent. *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) ("The existence of substantial non-infringing uses for the accused [products] defeats [patentee's] claim for contributory infringement as a matter of law.").

*Fourth*, Microsoft cannot show that AlmondNet has any specific intent to induce infringement, and thus AlmondNet cannot be liable for induced infringement. The Supreme Court of the United States recently confirmed that "induced infringement under § 271(b) requires knowledge [by the accused indirect infringer] that the induced acts constitute patent infringement." *Global-Tech*, 131 S.Ct. at 2068. In other words, liability for induced infringement cannot be based upon acts that "just happen" to infringe a patent. *Id.* The alleged infringement of the '248 patent based upon the temporary caching of information is a perfect example of an act that "just happens." AlmondNet's corporate witness explained that AlmondNet saw no need to store "customization information" on the Post-Search server, and that technically it did not make sense to do so. (APFF ¶ 57.) Nonetheless, due to features of web design, AlmondNet did temporarily cache some information to address the scenario where multiple requests were coming in to the server during a user's single (not subsequent) visit to a network address. (APFF ¶ 51, 57.) That this temporary caching allegedly also infringes the '248 patent is an unintended side effect, and cannot form the basis for Microsoft's induced infringement claim.

Because Microsoft has not and cannot present any evidence supporting its allegations of indirect infringement, this Court should grant AlmondNet summary judgment of no indirect infringement.

## IV.    CONCLUSION

Because temporary caching of information on a server is not "storing" information on the server within the context of the '248 patent, AlmondNet respectfully requests this Court grant it

summary judgment of non-infringement of the '248 patent.  Alternatively, AlmondNet asks this Court to grant it summary judgment of non-infringement of claims 1-4, 8-10 and 17 because Microsoft has failed to present any evidence that a user has subsequently accessed the Post-Search server within the nine minutes the user's cache is maintained on the server.  Finally, AlmondNet asks this Court to grant it summary judgment of no indirect infringement because Microsoft has not and cannot present any evidence in support of its indirect infringement allegations.

Dated:  August 5, 2011

/s/ Ryan Pohlman
James Peterson
Jennifer Gregor
GODFREY & KAHN S.C.
One East Main Street
Madison, Wisconsin 53703
P: 608-257-3911
F: 608-257-0609

David K. Callahan, P.C.
Meredith Zinanni
Ryan Pohlman
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
P: 312-862-2000
F: 312-862-2200

*Attorneys for Plaintiff, AlmondNet, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify on this 5th day of August, 2011 that a copy of the foregoing was filed electronically through the Court's CM/ECF system, with notice of case activity automatically generated and sent electronically to all parties.

/s/ Ryan Pohlman